**In the Matter of the WELFARE OF M.E.W., Child.**

**No. C9–86–1273.**

Court of Appeals of Minnesota.

Feb. 10, 1987.

Beverly J. Anderson, St. Paul, for appellant Mother.

Winton J. Mason, Itasca Co. Atty., Grand Rapids, for Itasca County.

Steven M. Bradt, Arthur J. Seifert, P.A., Grand Rapids, for M.E.W., Minor.

Considered and decided by WOZNIAK, P.J., and LESLIE and RANDALL, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Janet G. appeals from the order finding her daughter, M.E.W., a neglected child. She argues that the allegations in the neglect petition were not proven by clear and convincing evidence. We affirm.

## FACTS

Jack G. is stepfather to twelve-year-old M.E.W. and is married to Janet G. who is M.E.W.'s natural mother. Mr. and Mrs. G. have been married four years and have two young children from their marriage. On June 2, 1986, custody of M.E.W. was transferred to the Itasca County Social Services Department pending an investigation into allegations that she is a neglected child. The investigation was prompted after two young teenage boys reported to the Itasca County Sheriff's Department that a man driving a red pick-up truck with a camper on top had approached them asking if they wanted to see a strip tease. As the man was talking to them, the boys could see a young girl, later identified as M.E.W., standing naked inside the camper. The police later stopped a red pick-up with a camper on top. Jack G. was driving and M.E.W. was in the camper portion.

The county filed a neglect petition, and a hearing was held on June 25–26, 1986. Among the witnesses to testify were several employees of a resort lodge where Jack G. and M.E.W. frequently went to swim. The employees testified that Jack G. and M.E.W. were always close and touching when they were in the pool together. They would occasionally straddle one another and would engage in light kissing. Two employees saw M.E.W. place her hands on the outside of Jack G.'s swimming trunks over his penis. The employees testified that Jack G. and M.E.W. acted quite differently, however, whenever Janet G. and the other children were at the pool. Then they paid no special attention to one another and exhibited none of the behavior that typified their time alone in the pool.

Doctor Kristin Johnson, a family practitioner who conducted an internal examination of M.E.W., testified that the vagina admitted the speculum more easily than she would have anticipated in a young woman who has not had sexual intercourse. The doctor testified that, in her experience, whenever a young girl in the 12– to 14–year-old age group denies having sexual intercourse, there is more tightness in the vaginal opening.

The county also called four teenage boys to testify about two separate incidents where Jack G. had offered M.E.W. for strip tease. During one incident, Jack G. was talking to two boys while M.E.W. was standing naked inside the camper with the door open so the boys could see her. She made no attempt to move, and eventually she covered herself with a towel. On another occasion, after Jack G. asked two boys if they wanted to see a strip tease, M.E.W. told the boys they would see more when they paid more.

The trial court found that a sexual relationship existed between Jack G. and M.E.W. Witnesses' observations and medical testimony indicating that M.E.W. is sexually active led the court to conclude that the sexual activity was with Jack G. The court further found that Jack G. had offered M.E.W. for sex play or strip tease. The court also found that Janet G. knew or had reason to know of an inappropriate relationship developing between Jack G. and M.E.W. Based on these findings, the court determined that M.E.W. was a neglected child.

After a dispositional hearing, the court ordered M.E.W.'s custody transferred to the Itasca County Social Services Department. M.E.W. was later returned to her mother's custody pursuant to a revised dispositional order which imposed several requirements as conditions for continued custody, including requirements that Jack G. not contact, and Janet G. not permit Jack G. to contact, M.E.W. unless authorized by the Social Services Department, and that Janet G. seek counseling for herself and M.E.W.

## ISSUE

Is the trial court's finding that M.E.W. is a neglected child supported by clear and convincing evidence and not clearly erroneous?

## ANALYSIS

■ Allegations of neglect must be proven by clear and convincing evidence. *In Re Welfare of C. Children*, 348 N.W.2d 94, 96 (Minn.Ct.App.1984); Minn.R.Juv.P. 59.05. On review, however, a trial court's factual findings will not be set aside unless clearly erroneous. *In Re Welfare of S.G.*, 390 N.W.2d 336, 341 (Minn.Ct.App.1986). The neglect petition filed by the county specifically alleges that M.E.W. is neglected within the meaning of the statute because she is a child (1) "[w]ho is without proper parental care because of the faults or habits of a parent, guardian, or other custodian," and (2) "whose occupation, behavior, condition, environment or associations are such as to be injurious or dangerous to [the child] or others." Minn.Stat. § 260.015, subd. 10(b), (f) (1984 & Supp.1985). Janet G. contends that the evidence is insufficient to show that she neglected M.E.W. She insists she did not know that an improper relationship had developed between her daughter and her husband. We believe her argument is misdirected.

■ The trial court's adjudication that M.E.W. is a neglected child is not an adjudication that M.E.W. suffered "parental neglect." Janet G.'s argument that she knew nothing of the relationship addresses her conduct as a parent, which is the focus of Minn.Stat. § 260.015, subd. 10(b). Whether she knew, however, is immaterial to the determination that M.E.W. is a neglected child as defined in subdivision 10(f). Under this subdivision, the focus of the inquiry is on the child and whether her behavior or environment or associations are such as to be injurious or dangerous to her.

Here, Janet G. is married to Jack G., which is a condition of M.E.W.'s environment over which she has absolutely no control. The medical evidence indicates M.E.W. is sexually active. Other evidence shows that her association with her stepfather is characterized by inappropriate behavior. Her conduct at the pool and her acquiescence to, and even participation in, Jack G.'s soliciting her for strip tease is conduct which is neither safe nor healthy in a child of twelve. The evidence overwhelmingly establishes that M.E.W. is a neglected child within the context of subdivision 10(f).

## DECISION

The trial court's finding is not clearly erroneous, and the court's revised dispositional order will remain in effect.

Affirmed.